**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| NONEND INVENTIONS, N.V., | CASE NO. 2:15-CV-466-JRG-RSP |
| Plaintiff, | |
| | **LEAD CASE** |
| v. | |
| APPLE INC., | |
| Defendant. | |

**JOINT MOTION FOR ENTRY OF (DISPUTED) PROTECTIVE ORDER**

The parties jointly move for entry of a protective order.  The parties have agreed on many issues, but several disputes remain.  The parties ask that the Court rule on these disputes and enter an appropriate protective order.  A proposed protective order (with each side's proposals on disputed issues) is attached.  Here are the parties' statements on the disputes:

1.     **Source Code Review**

<u>Nonend's Statement</u>

Nonend is willing to agree to the source-code provisions contained in the Court's model protective order, which are more than sufficient to protect defendants' legitimate interests in protecting their source code.  But defendants have proposed a plethora of additions and revisions that would make the source code review unduly burdensome and that would unfairly hinder Nonend's ability to prepare and prosecute its case.  ***All of the discussion below concerns proposals defendants have made to alter the source-code provisions of the model protective order.***

First, defendants initially proposed adding a provision to the protective order that would prohibit Nonend's experts from using compilers, interpreters, or simulators in their review of

source code.  Defendants specifically proposed adding the following language to the protective order:  "The Receiving party shall not at any time use compilers, interpreters, or simulators in connection with the Producing Party's Source Code."  Defendants removed that provision from their proposal one day before this filing was due.  But defendants have not dropped their position.  Defendants are now trying to flip the issue on its head, and are arguing that it is Nonend who is seeking to add to the Court's model protective order a provision allowing the use of such tools, and that plaintiff has not met its burden of showing that such modification of the Court's standard protective order is necessary.

As an initial matter, Nonend is perfectly fine with the parties simply producing source code, in which case there would be no restriction on Nonend's ability to use appropriate tools to review and test the code.  So it is defendants' burden to show good cause for a protective order that would restrict Nonend from using such tools.  Moreover, defendants are wrong when they say that the Court's model protective order prohibits the use of these tools, and that it is Nonend who is seeking to modify the model protective order.  Defendants have pointed to nothing in the model order that would impose such a requirement.  And finally, there is no good reason to impose such a requirement.  Interpreters, compilers, and simulators are standard tools that are regularly available to and used by computer scientists to understand the working of code.  *See* Declaration of John Hale at ¶ 5.  They are also necessary for performing tests and demonstrations of the operation of the defendants' code.  *See id*. And the use of these tools does not pose any risk to defendants' source code.  *See id*. at ¶ 6.  Defendants have not provided any good reason why these tools should not be allowed.  *See, e.g.,  GeoTag Inc. v Frontier Comm. Corp*., No. 2:10-cv-265, Dkt. No. 372 at 8-9 (E.D. Tex. Jan. 8, 2013) ("The Court finds that analysis tools are necessary for Plaintiff to properly conduct its infringement analysis. Although Defendants

bear the burden to support their proposed limitation, they provide no compelling rationale for denying Plaintiff's request."). In view of defendants' position that the model order somehow prohibits the use of these tools, in order to avoid disputes in the future, the Court should confirm that the model order does not prohibit the use of these tools.

At approximately 6:30 pm on the night this motion is due to be filed (after obtaining a one week extension from the Court for this filing), defendants for the first time have advanced several arguments that there are too many issues that would need to be resolved before Nonend should be allowed to use basic interpreter, compiler, and simulator tools for its source-code review. Those issues could have been addressed easily if defendants had raised them in a timely manner. But in any event, they are not issues that should prevent resolution of this dispute. To the extent defendants have their own tools associated with their source code that are necessary for an appropriate review, those tools should be required to be provided by defendants. To the extent Nonend wants to use its own tools, Nonend should be responsible for securing appropriate rights to use them. And if Nonend's experts say that certain tools are necessary and defendants' experts say they are not, should there really be a mini-trial on the issue before Nonend can use the tools? To the extent Nonend's experts believe that tool is necessary, there is no reason why they should be required to get agreement from defendants that the tools are necessary before being allowed to use them. In any event, these are not issues that should prevent the Court from confirming that the model protective order does not prohibit the use of basic interpreter, compiler, and simulator tools for source-code review.

Second, defendants seek to impose burdensome restrictions on the inclusion of source code excerpts in court documents that must be served and filed. *See* Section 10(e). Under the Court's model protective order, expert reports, court filings, discovery responses, etc., may

- 3 -

include source code excerpts so long as the appropriate designations and filing under seal procedures are followed.  Defendants, however, propose a procedure under which Nonend could not serve or file a document having source code excerpts in it, without first obtaining the express permission of defendants.  Defendants could simply object, and Nonend would not be allowed to serve or file the document until the issue was resolved by the Court.  That unnecessary procedure would place unfair obstacles in Nonend's path as it endeavors to timely serve and file documents in this litigation.  The Court's systems for filing documents under seal provides adequate protection for defendants' legitimate concerns.

Third, defendants seek to prevent Nonend from printing documents to PDF files and saving them on media such as flash drives, and instead insists that Nonend can only work with paper copies.  *See* Sections 10(e), 10(g), 10(i), and 10(k).  As the model protective order contemplates, Nonend should be allowed to save documents in electronic format to make it easier to store and transport them.  As a compromise, Nonend offered to encrypt any such electronically printed documents (e.g., PDF print-out saved on a flash drive), which would make them even safer than paper printouts.  Defendants have not agreed to that compromise or provided any good explanation why that would not address their concerns.  Instead, they assert in conclusory fashion that "mere encryption" is not enough to protect code on CD's or flash-drives that may be lost or misplaced.  That ignores that "mere encryption" provides much more protection, since paper files may be lost or misplaced as well (and using simple OCR tools, it is much easier to convert paper printouts of source code into electronic format than it would ever be to break encrypted files).  There is thus no legitimate reason to force Nonend to work only with paper print-outs.

Fourth,  defendants seek to impose a drawn-out procedure for Nonend to actually be able to obtain any source code that it prints out.  *See* Section 10(h).  Under defendants' proposal, Nonend would be required to immediately turn over any print-outs it makes to defendants, who would then spend an unspecified amount of time logging, labeling, and copying the printouts for itself before returning the printouts to Nonend.  That is completely unnecessary.  To the extent source code excerpts are printed out on paper, they will be printed on paper supplied by defendants in their own printers.  That paper should already bear any numbering or other labels that defendants desire.  Defendants can simply run a copy of any such printouts before Nonend's source-code reviewers leave for the day, which should take a matter of minutes.  To the extent electronic printouts are made (for example, pdf images saved on a flash drive), the same files can similarly be copied to another flash-drive for defendants to keep.   Again, that can be accomplished in a matter of a few minutes.  In either case, defendants would immediately have an exact record of exactly what was printed.   There simply is no need for the drawn-out procedure that defendants propose.

Fifth, the model protective order allows defendants to make a reasonable number of print-outs. The model order's reasonableness standard allows the parties the flexibility they need to prepare and prosecute their case, while still ensuring that an excessive number of copies are not made.  *See, e.g., Bluebonnet Telecommunications L.L.C. v. Sony Ericsson Mobile Communications (USA) Inc.*, Case No. 2:13-cv-505, Dkt. No. 34 at 2 (E.D. Tex. March 12, 2014) (holding that it was well within the Court's discretion to refuse "to include an arbitrary limit defining a 'reasonable' number of pages of printed source code").  Defendants, however, propose imposing an arbitrary limit of 3 copies total of any print-out.  *See* Section 10(h).   The unreasonableness of defendants' proposal is demonstrated by the fact that they are proposing a

- 5 -

limit that is only half of the limit that was adopted in *ContentGuard*, their <u>best</u> case. This is a big case, and as Nonend has already made clear in its infringement contentions, defendants' source code will be very important.  Nonend already has disclosed two technical experts, and Nonend expects that at least them and all five of the attorneys from the AHT firm will be working on this matter (and that it may be necessary to have additional attorneys join the matter in the future.) The limits defendants seek to impose are simply not reasonable for this case.

Sixth, Nonend would not allow any source code printouts to be transported in any manner other than by hand courier.  *See* Section 10(k).  So, for example, if one of Nonend's experts travelled to Seattle to review Microsoft source code, that expert could not then send a copy (not even an electronic copy that had been encrypted and saved on a flash drive) to Nonend's outside counsel in Houston though a delivery service such as Federal Express.  Rather, Nonend would have to hire someone to board a plane and make a special trip to Houston for the sole purpose of delivering the print-outs.  That would make basic communication between Nonend's experts and attorneys outrageously expensive and time consuming.  It is not necessary.

The Court's model order strikes a balance between providing protection for the parties' legitimate concerns about their source code and the need to provide discovery of such source code without undue burdens to the receiving parties.  The Court should reject defendants' proposal to upset that balance.

<u>Defendants' Statement</u>

In this case, plaintiff has asserted more than 100 patent claims against literally hundreds of products belonging to 24 groups of defendants spread across 24 pending cases.  Nonend apparently asserts that all of these accused products infringe because they have the ability to stream media.  Defendants anticipate that, for many defendants, production of a considerable

- 6 -

amount of highly sensitive, trade secret-protected source code will be required in this case.  In fact, its infringement contentions for defendant Apple, Nonend asserts that nearly all of the asserted claims' limitations are "a software limitation."  Courts have repeatedly recognized that source code is highly sensitive, highly valuable and should be protected accordingly. *See e.g., Geotag, Inc. v Frontier Communs. Corp.*, 2013 U.S. Dist. LEXIS 25774 at *261 (E.D. Tex. Jan. 7, 2013) (explaining that additional protections were needed for source code because of its "highly confidential nature" and that the interests of protecting the code far outweighed the conveniences that plaintiff sought in accessing it); *Evolutionary Intelligence, LLC v. Apple, Inc.*, 6:12-cv-00783, slip op. at 9 (E.D. Tex. Aug. 27, 2013) (considering the sensitive nature of Twitter's California-based source code in ordering transfer to the Northern District of California).  Although plaintiff expressly acknowledges that defendants have "legitimate interests in protecting their source code," plaintiff positions on defendants' proposed revisions either would not adequately or appropriately protect defendants' source code or would be unduly burdensome on defendants.

For Apple alone, plaintiff has accused of infringement nearly every consumer device Apple sells.  Apple's proprietary iOS is used in Apple's iPhone, iPad, iPod touch and Apple TV products, all of which appear to be accused products.  Kellerman Decl. ¶ 3.  Apple's proprietary OS X is used in Apple's Mac products, including the iMac, Mac Pro, Mac mini, MacBook, MacBook Pro, and MacBook Air, all of which appear to be accused products.  Kellerman Decl. ¶ 4.  Thus, discovery will likely require Apple to produce portions of highly sensitive and trade secret-protected source code, including portions of Apple's iOS and OS X operating systems, iTunes, QuickTime, iOS Airplay, and WiFi Assist.  Kellerman Decl. ¶ 5.

Because of its importance to Apple's business, Apple strictly limits access to this code, even inside the company.  Kellerman Decl. ¶ 6-8, 11.  Indeed, the source code listed above is provided the highest level of protection and security within Apple.   Kellerman Decl. ¶ 8. Physical access to the code is limited to select groups of authorized Apple employees, with access being provided only as to portions of code and on a need-to-know basis.  *Id.*  Access is strictly limited to employees directly involved in software development, management, and security.  *Id.*  The employees with such access must be approved by senior management as authorized employees, and receive unique access and security codes and passwords allowing them to review portions of the source code.

Any production of source code outside the tight controls maintained within Defendants' facilities poses the risk of unauthorized disclosure and great injury to Defendants.  For Apple, as one of the largest and most highly publicized companies in the world, defendant Apple's trade secrets are extremely sought after.  Apple's competitors and the "tech blogosphere" (*i.e.*, the community publishing the latest technology releases, leaks, and rumors) daily search for and broadcast virtually every scrap of activity they can learn about Apple's products and activities. *See  e.g.*,  http://appleinsider.com/articles/13/06/19/leaked-schematics-reveal-what-case-makers-expect-apples-low-cost-iphone-iphone-5s-will-look-like.   If  Apple's  most  sensitive  trade secrets—its source code—were to be disseminated in any manner, even inadvertently, Apple would face potentially devastating competitive harm.  Kellerman Decl. ¶ 9-10.  Because iOS, OS X and iTunes also protect personal consumer information, any breach of security would result in grave and irreparable harm that could affect not only Apple, but millions of consumers.  *Id.*

The restrictions Defendants seek are necessary because the electronic nature of source code renders the code easily copied.  *Id.* ¶ 12.  Indeed, the protections defendants seek with

respect to plaintiff's access, use, printing, and transport of source code not only are narrowly tailored to ensure protection of the source code and identify any breaches at the earliest possible time, but also provide plaintiff reasonable access to the information it needs to prosecute its claims.

Section 10(c):  The parties agree to the language of the Model Order, but disagree over what it means or permits with respect to source code review tools.  Plaintiff seeks to add to the Court's model protective order permission for the plaintiff to use compilers, interpreters or simulators—or indeed, any source code tools it may demand later on in this case— in order to analyze and manipulate Defendants' source code during its source code review.  Defendants propose only that the Court enter the model order with respect to this provision for several reasons.  First,  plaintiff has not met its burden to show that use of these compilers, interpreters or simulators is necessary or required.    Indeed, neither plaintiff nor its expert, John Hale, identify any claim limitation or accused software function that requires a compiler, interpreter, or simulator to analyze or understand.  Second, the plaintiff has not provided the defendants with a list of other tools it may demand, so that the parties have not met-and-conferred regarding: (1) who will pay for the license to install certain tools, to the extent defendants do not already have the tools and a license to install them; and (2) whether those source code tools are necessary and appropriate in the first place.  For example, some source code review tools are expensive, some tools that work for Windows source code cannot work for Apple source code, and vice versa, and other tools the plaintiff may identify later could present significant cost and/or security concerns. In the event that plaintiff does identify any need for any other particular source code tools, then the parties can meet and confer regarding whether those source code review tools are reasonable or necessary, and who will pay for them.

Section 10(h): The reasonable revisions that Defendants propose restricting the copying of source code impose no substantial burden on the plaintiff.  Defendants have not asked for any presumptive limits on the amount of source code that can be printed in the first instance, and instead to defer to the Model Order limitation of a "reasonable number of printouts."  However, in terms of the number of photocopies of those print outs that can then be made, Defendants propose establishing some limits now to protect their highly confidential, trade secret-protected source code, and also to avoid disputes over that the number of copies that it is "reasonable" to copy later on.  In ContentGuard, the Court entered reasonable limitations on the number of copies that could be made.  ContentGuard Holdings, Inc. v. Amazon.com, Inc. et al., Case No. 2:13-cv-01112-JRG (Docket No. 151), at 22(iv) (June 6, 2014) (limiting print outs provided to plaintiff to "not more than 600 pages total or 10% of the reviewed lines of source code, whichever is less 24" and 6 total copies).  Here, Defendants do not even propose some total page or percentage limit.  Rather, because of the highly confidential, trade-secret protected nature of the source code at issue, Defendants only propose a limit on the number of copies of the printouts that can be made.

Sections 10(e), 10(g), 10(i), and 10(k): The revisions proposed by Defendants prohibiting electronic copies are strictly necessary to protect defendants' highly confidential, trade secret protected source code and are entirely consistent with orders from this Court.  Geotag, Inc. v. Frontier Comms. Corp., 2:10-cv-265 (E.D. Tex. Jan. 8, 2013).  In Geotag, for example, this Court expressly prohibited media devices from entering the source code room, despite plaintiff's complaints about efficiency and their assurances that the rest of the protective order was sufficient protection.  Id. at 7.  Similarly, in ContentGuard Holdings, Inc. v. Amazon.com, Inc. et al., Case No. 2:13-cv-01112-JRG (Docket No. 151) (June 6, 2014), the Court expressly

- 10 -

prohibited "recordable media or recordable devices, including without limitation sound records, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind" from entering the Source Code review room.  *Id.* at 20(ii) ("No recordable media…").

Furthermore, in *ContentGuard,* the Court prohibited any electronic emailing or transmission of the source code, and prohibited filing of code without express permission and without meeting-and-conferring with the producing party.  *Id.* at 21(iv) ("No person shall copy, e-mail, transmit, upload, download, print, photograph or otherwise duplicate any portion of the designated Source Code…"); *id.* at 24 (xi) ("absent express written permission from the Producing Party, the Receiving Party may not create electronic images, or any other images, or make electronic copies, of the Source Code from any paper copy of Source Code for use in any manner (including by way of example only, the Receiving Party may not scan the Source Code to a PDF or photograph the code).").

While plaintiff complains that it should be able to electronically store and transmit Defendants' source code, that does not adequately protect the highly confidential, trade-secret protected source code that will be produced in this case.  Transporting or electronically copying Defendants' source code productions in any way compromises the security of the source code. Once electronic copies are made, it is possible they can never be completely deleted, in particular from backup email systems and other electronic storage.  Transporting or storing copies of produced source code pages through easily lost or misplaced means (on electronic media, or by common courier such as FedEx or UPS) further compromises the security of the source code, increasing the risk of unauthorized disclosure and great injury to Defendants.  Merely encrypting a CD or flash drive that may be lost or misplaced is insufficient to protect the security of Defendants' source code given the highly sensitive and trade secret-protected nature of the code.

WEST\260075296.2

While plaintiff complains that it should be able to file or serve Defendants' source code in electronic documents without meeting and conferring with Defendants, this is insufficient in this particular case given that plaintiff will be: (1) making electronic copies of Defendants' highly confidential, trade secret-protected source code, which alone risks the security of the source code; and then (2) serving that filing or other electronic document containing highly confidential, trade secret-protected source code on the other Defendants—many of whom are competitors.  Beyond question, the risk of competitive harm to Defendants is extreme in this circumstance.  Moreover, the relevance and importance of any source code for any particular use should be obvious to plaintiff early enough for the parties to meet and confer regarding any portions of source code to be filed or served long before any deadline.

As stated above, the protections defendants seek with respect to plaintiff's access, use, printing, and transport of source code not only are narrowly tailored to ensure protection of the source code and identify any breaches at the earliest possible time, but also provide plaintiff reasonable access to the information it needs to prosecute its claims.  Any production of source code outside the controls proposed by Defendants poses the risk of unauthorized disclosure and great injury to Defendants.

### 3.    Prosecution Bar

<u>Nonend's Statement</u>

Nonend is willing to agree to the prosecution bar provisions included in the Court's model protective order.  Defendants have rejected that, and instead have proposed a prosecution bar that applies only to Nonend and that includes additional, burdensome provisions.  But the reality is that defendants cannot show that ***any*** prosecution bar for Nonend's outside counsel is appropriate, let alone the one-way, burdensome prosecution bar they propose.  The Court should

decline to enter a prosecution bar, or, at most, enter the prosecution bar set forth in the Court's model protective order.

As an initial matter, defendants cannot show that a prosecution bar is appropriate for Nonend's outside counsel.  The Federal Circuit has recognized that the risk of inadvertent, innocent use of a party's confidential information (due to a patent attorney's inability to compartmentalize and suppress information once learned, no matter how well intentioned) may at some point rise to the level justifying a prosecution bar.  *See, generally, In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378–81 (Fed. Cir. 2010).  But the Federal Circuit has cautioned that a prosecution bar should be put in place only where the nature of the prosecution activities engaged in by counsel is substantial enough that the risk of inadvertent, innocent use of a competitor's confidential information warrants imposing a prosecution bar.  *See id.* at 1379-80. Because Nonend's outside counsel focus their practice on patent litigation, and have had (and intend to have) at most very little involvement in prosecution, the risks that would warrant imposing a prosecution bar are not present.  *See, e.g., Velocity Patent, LLC v. Audi of America, Inc.*, 2015 WL 294849, *1 (N.D. Ill. 2015); *Chiesi USA, Inc. v. Sandoz Inc.*, 2014 WL 4182351,*3-*5 (D.N.J. 2014).

Nevertheless, Nonend is willing to accept a reasonable, mutual prosecution bar, as set forth in the Court's model protective order.  Defendants, however, have proposed overly burdensome provisions and (perhaps not surprising given the burdens they seek to impose) ask that the prosecution bar they seek not apply to them, but rather only to Nonend's counsel.

(1)   Reexamination/IPR:  Defendants propose that the prosecution bar apply not only to the prosecution of patent applications, but also that it also apply to reexamination/IPR (and similar) proceedings before the Patent Office.  The Court should reject defendants' proposal, just

- 13 -

as it has done in numerous other cases.  *See, e.g.,  GeoTag Inc. v Frontier Comm. Corp.*, No. 2:10-cv-265, Dkt. No. 372 at 11  (E.D. Tex. Jan. 8, 2013); *Mirror Worlds, LLC v. Apple, Inc.,* 2009 WL 2461808 at *2 (E.D. Tex. Aug. 11, 2009); *Document Gen. Corp. v. Allscripts, LLC*, 2009 WL 1766096 at *3 (E.D. Tex. June 23, 2009).

Defendants say that imposing a reexamination/IPR bar on Nonend's counsel would not be particularly burdensome because Nonend has separate prosecution counsel.  But Nonend does not have separate reexamination/IPR counsel.  Rather, Nonend and its counsel expect that Nonend's current litigation counsel will be at least primarily, if not solely, responsible for defending any reexamination/IPRs filed by defendants.  Moreover, any issues raised in a reexamination/IPR challenge is likely also to be raised in this litigation.  It would be particularly burdensome to force Nonend to hire separate counsel and make them independently fight the same battle on two separate fields.  Finally, the risk in having litigation counsel be involved in reexamination/IPR proceedings is much less than having litigation counsel be involved in prosecution because claims can only be narrowed during reexamination proceedings (and even narrowing limitations can be added only if there is already support for them in the original patent specifications.  Defendants have not shown that there are any special circumstances in this case that would justify the reexamination/IPR bar that they seek to add to the prosecution bar.

Defendants rely on *Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW, 2006 WL 3741891 (E.D. Tex. 2006).  But that case did not address the issue of <u>whether</u> a reexamination bar should be put in place.  Rather, it addressed post-trial motions concerning serious, ongoing violations of an existing bar that was already in place.  *See id.* at *6-7.  And that case was specifically distinguished by other cases that refused to enter a reexamination/IPR bar.

*See, e.g., Document Gen. Corp. v. Allscripts, LLC*, 2009 WL 1766096 *3, n. 1 (E.D.  Tex. June 23, 2009).

(2)     Technical Scope:  Defendants propose that the technical scope of the prosecution bar be expanded from prosecution "pertaining to the field of the inventions of the patents-in-suit" to cover any prosecution "pertaining to the field of the HIGHLY SENSITIVE MATERIAL." That would mean that it would cover any technical subject addressed in any document produced by defendants.  That is not only very broad, but it would be also very difficult to comply with, since the parties would have to examine perhaps millions of pages of production for every possible technical subject matter area addressed by such documents, and then make sure not to participate in any prosecution related to all of those topics.   Having the technical scope be defined by patents-in-suit provides a workable standard that can, as a practical matter, be implemented by those attorneys subject to the bar, while still fairly protecting the parties from the possible innocent, inadvertent use of their confidential information.

3.     Mutual v. Non-Mutual Bar:  Defendants ask that the prosecution bar be applied only to Nonend's counsel and not any other parties' counsel.  But just like defendants, Nonend has and will be producing highly confidential information.  For example, Nonend has highly confidential technical information, including source code, testing simulations, flow charts, block diagrams, and technical requirements documents, that have been or will be produced in this action. Defendants' counsel exposed to Nonend's confidential information could just as easily inadvertently use it to their clients' benefit as could Nonend's counsel exposed to defendants' confidential information accidently use it to the benefit of Nonend.  (In fact, the risk is even greater for defendants' counsel since many of defendants' law firms actually have patent prosecution practices.)  Additionally, Nonend is continuing to seek patents from the patent

- 15 -

office, and will likely have to produce its confidential patent applications to defendants. Defendants, who also actively seek to obtain patent protection, could use Nonend's currently confidential patent applications to try to write patent claims that cover the same subject matter. In these circumstances, to the extent a prosecution bar is put in place against Nonend, it is equally appropriate against defendants. *See, e.g., Bluebonnet Telecommunications L.L.C. v. Sony Ericsson Mobile Communications (USA) Inc.*, Case No. 2:13-cv-505, Dkt. No. 34 at 2 (E.D. Tex. March 12, 2014) (requiring the prosecution bar to be mutual in similar circumstances).

One more point:  making the prosecution bar mutual will ensure that defendants do not seek to impose unreasonably burdensome demands.  If defendants knew that the prosecution bar was going to apply to them, there is no way they would be seeking to impose the modifications that are now asking be imposed on only Nonend's counsel.

Defendants' Statement

Defendants propose three modifications to the prosecution bar in the Court's model protective order: (1) that the bar apply only to Nonend; (2) that the bar cover post-grant challenge proceedings in addition to preparation or prosecution of patent applications; and (3) that the bar cover prosecution activities pertaining to the field of the "HIGHLY SENSITIVE MATERIAL" rather than the field of the "inventions of the patents-in-suit."  Defendants respectfully request, however, that if the Court declines to order a bar that applies only to Nonend, the Court also deny Defendant's request that the bar cover post-grant challenge proceedings.

1.     Mutual v. Non-Mutual Bar:  The rationale for including a prosecution bar in a protective order is well-settled: since it is "very difficult for the human mind to compartmentalize and selectively suppress information once learned," there is a danger that a

party's litigation counsel who had accessed another party's confidential information could misuse that information—whether intentionally or unintentionally—for purposes of competitive decision making in proceedings before the PTO.  *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1379 (Fed. Cir. 2010).  The Federal Circuit has stated that "making strategic decisions on the type and scope of patent protection" and "strategically amending or surrendering claim scope" are examples of such competitive decision making.  *Id.* at 1380.  Here, since Nonend's litigation counsel will have access to Defendants' extremely sensitive and highly confidential source code and other information, there is a heightened danger of misuse or inadvertent disclosure of that information by Nonend's counsel in proceedings before the PTO because Nonend can draft or modify patent claims to cover Defendants' products based on confidential information that Nonend's litigation counsel obtained in litigation.

This danger of an inadvertent misuse of Defendants' highly confidential product information and source code is not merely speculative.  While Nonend first argues above that there is no need for a prosecution bar of any type, it then admits that if IPRs are instituted for the patents-in-suit, Nonend wants its litigation counsel, even individuals that have had access to Defendants' highly confidential product designs and source code, to be involved in the IPRs. And as addressed below, such involvement would create a significant danger of inadvertent misuse of that confidential information.

In contrast, there is absolutely no rationale for imposing a prosecution bar on Defendants in this case.  As far as Defendants can tell, Nonend's only business is licensing and enforcing its patents, and Nonend does not sell or otherwise offer products of any kind.  Thus, even if, as Nonend contends, it will produce or has produced "source code, testing simulations, flow charts, block diagrams, and technical requirements documents," there is no danger that Defendants will

inadvertently use those documents to prosecute patent claims that cover Nonend's products because there are no such products (and Nonend has not indicated that it intends to release any such products). *SmartFlash LLC v. Apple Inc.*, No. 6:13-cv-447, Dkt. No. 139 at 3 (E.D. Tex. May 12, 2014) (granting prosecution bar that applied only to plaintiff because "[plaintiff] does not currently sell any products, [so] there is no corresponding risk of inadvertent disclosure and misuse").

Moreover, Nonend's argument that "Defendants . . . could use Nonend's currently confidential patent applications to try to write patent claims that cover the same subject matter" is without merit.  First, Nonend's patent applications will be made public by the PTO, so they are "confidential" for only the short period of time before filing and public disclosure by the PTO. Second, under the first-to-file rule of the American Invents Act (*see* 35 U.S.C. 102(a)), Defendants will not be able to file patent applications that "cover the same subject matter" as an earlier-filed patent application by Nonend.  Thus, Nonend has not demonstrated any risk that would justify placing a prosecution bar on Defendants.

Therefore, because the only risk of inadvertent misuse of confidential information would be on Nonend's part, the Court should order a prosecution bar that applies only to Nonend.

2.     Reexamination, *Inter Partes* Review, or Post-Grant Review:  Defendants propose that the prosecution bar preclude Nonend's litigation counsel from participating in "reexamination, *inter partes* review, or post-grant review" in addition to preparation or prosecution of patent applications.  In each of these PTO proceedings, Nonend and its counsel have the ability to modify claim scope through (1) amendment, (2) addition of new claims, (3) claim construction arguments, or (4) statements made during prosecution.  Thus, as discussed above, there is a significant risk that any attorney for Nonend who has reviewed Defendants'

confidential information will improperly use that information in reexamination, *inter partes* review, or post-grant review.

That risk outweighs any potential harm to Nonend.  Nonend's litigation counsel does not appear to have an extensive—if any—history of representing Nonend before the PTO.  Nonend's litigation counsel did not prosecute any of the asserted patents or related patents in this case, and at least one pending related patent application is being prosecuted by attorneys at another law firm.[1]  Indeed, Nonend's litigation counsel appears to have only recently begun representation of Nonend in legal matters of any kind, as Nonend was represented by different litigation counsel in earlier litigations that were dismissed in September 2014 and that involved the same patents as the ones asserted in this case.[2]  Since Nonend already has separate patent prosecution and litigation counsel, any burden on Nonend for having to engage other counsel to represent it before the PTO will be significantly reduced.

As for Nonend's argument that the asserted claims can only be narrowed during post-grant challenge proceedings, that argument does not take into account the reason the claims are being narrowed—that the claims are invalid.  If Nonend is required by the PTO to narrow the claims, Nonend will be able to choose from a myriad of potential amendments.  With knowledge of Defendants' confidential product designs, there is a substantial and unacceptable risk that Nonend's prosecution counsel will inadvertently use Defendants' design information to choose an amendment in an effort to cover the accused products.  *See Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW, 2006 WL 3741891 (E.D. Tex. 2006) ("The purpose of the prosecution bar is to prevent outside counsel from using, even inadvertently, confidential

---

[1] *See* U.S. Patent Application No. 14/082,136.

[2] *See Nonend Inventions NV v. Spotify USA Inc. et al*, No. 1:13-cv-00389 (D. Del.); Nonend Inventions NV v. Spotify USA Inc. et al, No. 1:12-cv-01041 (D. Del.).

information obtained in the lawsuit for purposes outside the lawsuit (e.g.,  drafting  claims during patent prosecution). This is true even if the result of the reexamination is narrower claim language.").

Finally, since, as discussed above, there is no corresponding risk of inadvertent disclosure by Defendants of Nonend's confidential information because Nonend does not sell products, counsel for Defendants do not need to be barred from participating in reexamination, *inter partes* review, and post-grant review proceedings on behalf of the petitioners.  However, should the Court deny Defendants' request for a prosecution bar that applies only to Nonend, Defendants respectfully request that the Court also deny Defendants' proposal that the bar cover post-grant challenge proceedings.

3.      Scope of the Highly Sensitive Material

Defendants propose that the prosecution bar apply to prosecution activities pertaining to the field of the "HIGHLY SENSITIVE MATERIAL" rather than merely the field of the "inventions of the patents-in-suit."  Defendants' proposal is necessary because Defendants will likely have to produce technical documents that contain confidential information related to many aspects of Defendants' accused products, not just the field of Nonend's alleged invention.  It would be impracticable—if not impossible—for Defendants to excise information not relevant to Nonend's alleged invention in documents that also contain relevant information, and Nonend surely will not agree to such excision.  Thus, in order to protect the full scope of Defendants' confidential information from inadvertent disclosure and to encourage fuller disclosure of technical information—thereby limiting burdensome discovery disputes—the prosecution bar should apply to confidential information that Nonend's attorneys *actually gain access to*, not merely to what Nonend contends is the alleged invention.  Finally, to the extent Nonend

- 20 -

contends that it would be "very difficult" to examine Defendants' documents to determine what prosecution related activities its litigation counsel cannot participate in, that is alleviated by the fact that, as Nonend states above, Nonend's litigation counsel has "at most very little involvement in prosecution."

### 4.      Protected Material Outside Of The United States

<u>Nonend's Statement</u>

Defendants are proposing that the parties not be allowed to bring any designated material outside of the United States, except if the specific protected material is needed for a foreign deposition.  *See* Section 13.  That would generally prevent Nonend's attorneys and experts from bringing designated materials on foreign trips.  For example, if Nonend's counsel travelled to the Netherlands to meet with Nonend's principals, Nonend's outside counsel would not be allowed to bring along designated material to refer to in the course of advising their clients.  Similarly, if Nonend's outside counsel or experts travelled to a foreign country for a particular deposition, and wished to review or otherwise work with designated materials for purposes other than that particular deposition, this provision would prevent that. The exception that defendants have provided for materials that are necessary for a particular foreign depositions does not address these concerns.

Moreover, defendants have not shown that any of the countries that are likely to be visited by Nonend's outside counsel would pose any special risks to their material.  To the extent that defendants have objections to countries that might pose a special risk (North Korea? Iraq? China?), Nonend would be more than willing to agree not to bring designated materials into such countries.   But travel to the Netherlands, for example, would not pose any unique risks that would justify the conditions that defendants are seeking to impose.

- 21 -

Finally, Nonend is not asking for the right to distribute defendants' materials to foreign nationals who will not be subject to the jurisdiction of the Court.  Rather, Nonend simply wants to make sure that its counsel, and its experts, who are indisputably subject to the jurisdiction of this Court, are able to work on the road when they are required to travel to foreign countries. This is particularly important because there are many foreign parties in this case, which makes it more likely that foreign travel will be required.

Defendants' Statement

Defendants' proposed revision to Section 13 addresses the risk associated with unnecessarily transporting Protected Material to foreign jurisdictions.  The Protective Order does not (and cannot) grant any Federal Court personal jurisdiction over persons located in foreign countries necessary to enforce the Protective Order.  *See e.g., Westerngeco LLC v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 367 n.17 (S.D. Tex. Mar. 2, 2011) ("Although a state may, in limited circumstances, extend its jurisdiction beyond the territorial limits of its sovereignty, any such extension is 'subject to the consent of other nations.'") (citations omitted).[3] For this reason, in *ContentGuard Holdings, Inc. v. Amazon.com, Inc. et al.*, Case No. 2:13-cv-01112-JRG (Docket No. 151) (June 6, 2014), the Court entered an even stricter prohibition on

---

[3] Federal Courts, including the U.S. Supreme Court, have repeatedly recognized the limits of their power to reach the activities outside of the United States and its territories. *See e.g., Brown v. Duchesne*, 60 U.S. (19 How.) 183, 195 (1856) ("Our patent system makes no claim to extraterritorial effect; these acts of Congress do not, and were not intended to, operate beyond the limits of the United States . . . ." (internal quotation marks omitted)); *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 531, 92 S. Ct. 1700, 32 L. Ed. 2d 273 (1972), *superseded by statute*, Patent Law Amendments Acts of 1984, Pub. L. No. 98-622, 98 Stat. 3383 (codified at 35 U.S.C. § 271(f)), *as recognized in Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007); *Power Integrations, Inc., v. Fairchild Semiconductor Int'l Inc.*, 711 F.3d 1348, 1371 (Fed. Cir. 2013) ("It is axiomatic that U.S. patent law does not operate extraterritorially to prohibit infringement abroad.")

transporting Protected Material to foreign jurisdictions.  *Id.* at 6 ("Secure Storage.  No Export.").
*ContentGuard* involved many of the defendants also sued by Nonend in these lawsuits.

Should any person outside of the jurisdiction of the Federal Courts misuse Protected
Material or violate the Protective Order in any manner, the producing party would be powerless
to enforce the provisions of the Protective Order against such person.  The producing party
would be unable to seek relief by, for example, requesting temporary restraining orders or
sanctions against the offending persons.  Any remedy that could be sought, such as sanctions,
would provide effectively no relief at all from competitive harm imposed by foreign nationals.
*See e.g., Cruz v. Hauck*, 515 F. 2d 322 (5th Cir. 1975) (in explaining the difference between a
judge's error made within her power and a challenge to the court's jurisdiction, the court
explained that the latter attacks the court's powers itself and that "[a]n order without power is
void").  Simply put, plaintiff's proposal asks the Court to issue an order that it cannot effectively
enforce against foreign consultants or other parties who would have access to Protected Material.

Notably, plaintiff wants the ability to carry Defendants' Protected Material outside of the
United States for purposes of this case, but presumptively plaintiff would be traveling
internationally in this case for depositions.  Defendants' proposal expressly permits the plaintiff
to do that, and therefore plaintiff's concerns in this regard are misplaced.

### 5.     Treatment Of Designated Materials For Trial

Nonend's Statement

The Court's model protective order, like almost all protective orders issued by courts,
contains a provision making clear that the parties will have to separately seek a pre-trial order to
govern the treatment of confidential materials at trial.  Defendants seek to exempt any designated
source code from this provision, so that all of the rules set forth in the protective order will apply

at trial for source code materials.  *See* Section 17.  How such materials should be handled at trial is something that should be taken up during pre-trial proceedings, not now, when the parties have not even begun to know what materials will be at issue, or what the ramifications of presenting them at trial will be.

Defendants argue as if they are not really trying to alter this provision.  But the effect of their proposal will be that unless plaintiff moves for new provisions for the treatment of source code at trial, the provisions of this order (designed for pre-trial) will stand.  That is exactly what this provision of the model order was designed to prevent.  To the extent defendants want to protect their source-code at trial, it is defendants' burden to make the appropriate pre-trial motions and to show good cause for such protections.  Defendants should not be allowed to reverse the proper procedure or shift the burden for moving on this issue.

Defendants' Statement

By their revisions, Defendants simply seek to set forth that the parties will confer in good faith regarding the handling of source code at trial, and that unless and until the Court enters a pre-trial order specifying how the parties will handle source code at trial, this Protective Order will continue to apply and to protect Defendants' source code.  Thus, defendants' proposed revision to 17 is reasonable given the highly confidential nature of defendants' source code and does not impose any substantial burden on plaintiff.

**6.     Disclosure Of Confidential Information To Other Defendants' Counsel**

Nonend's Statement

Defendants propose a provision prohibiting Nonend from disclosing any defendants' confidential information to any other defendant's attorneys (not to another defendant, to another defendant's attorneys).  *See* Section 28.  This is not workable.  Nonend is certainly willing to

agree that it will not just hand over a defendant's entire production to another defendant's attorneys.   But Nonend will certainly be referring to designated information of various defendants in response to motions, in response to discovery requests, in its expert reports, and in various other filings with the Court.   It would not be feasible for Nonend to have to prepare multiple redacted versions of such documents for each of the defendants.   Nor would it be fair. In many instances, the designated material will be relevant to multiple defendants, and will have to be shared with multiple defendants.   For example, if one defendant who makes or sells smartphones has a patent license agreement that is relevant to the appropriate royalty rate that should be paid in this case, that license would be relevant to the royalty that all of the defendants who make or sell smartphones should pay.   Nonend would certainly want to use that license agreement against all defendants in its damages expert report.   But that would mean that Nonend would need to provide that information to all of the defendants' attorneys, not just the defendant who had the license agreement.

The concern raised by defendants proposal is adequately addressed by provisions of the Court's model protective order that Nonend has already agreed to. Defendants can designate their sensitive materials such that they will only be provided to defendants' counsel, or even only to defendants' outside counsel, under strict conditions protecting their information.  This is more than enough to protect defendants' confidential information from being exposed to other defendants.   Defendants cite *ContentGuard* in support of most of their arguments, but not this one.   That is because there the Court allowed documents to be produced to other defendants' outside counsel, just as Nonend is proposing here.

Defendants routinely hire large law firms to represent them, and hand over their sensitive information to them, without demanding agreement that they not then represent competitors.

WEST\260075296.2

Indeed, many competitor defendants have hired the same outside counsel for this case.  For example, Microsoft, Amazon, HTC, HP, and Fujitsu are represented by the same attorneys at Perkins Coie *in this case*.  This reality is plainly inconsistent with the arguments that defendants are advancing here.  The truth is that, as recognized by defendants' own practices, the professionalism of the parties' outside counsel is more than enough to ensure that defendants' confidential information is not improperly exposed to other defendants.

Defendants' Statement

It is a basic precept of all protective orders that sensitive, confidential information produced in litigation should be used only for the purpose of that litigation, and indeed, the Court's model protective order recognizes this precept by stating that disclosure of confidential information is to be limited to certain persons associated with "this Action".  *See* Sample PO at Section 5.  Section 7 of the model order further states that "[d]ocuments, information or material produced pursuant to any discovery request in *this Action*…shall be used by the Parties only in the litigation of *this Action* and shall *not be used for any other purpose*."  Italics added.  There are multiple separate "Actions" at issue here, as recognized by the first sentence of the proposed protective order, which refers to "the consolidated *actions* assigned to this lead case."  Moreover, the AIA joinder provision requires that the multiple Actions be maintained as separate cases, stating that "accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit."  35 U.S.C. §299(b).  This joinder provision was designed to "address problems occasioned by the joinder of defendants (sometimes numbering in the dozens) who have tenuous connections to the underlying disputes in patent infringement suits."  H.R. Rep. No. 112-98, pt. 1, at 54.  Defendants simply seek to add a clarifying statement

to the protective order recognizing that the actions against each defendant are separate, for purposes of the protective order, given Nonend's stated intention to use information produced in each action for the purpose of other actions against other defendants.

The defendants in these cases, many of whom are fiercely competing against each other in the industry with little margin for error, are likely to be subjected to discovery regarding some of their most sensitive technical and financial information.  Thus, the defendants have a strong commercial interest in limiting the dissemination of that information and should not be required to share it with dozens of different law firms who are litigating separate cases against the plaintiff.  The fact that some of these law firms currently represent or have represented entities against one or more of the dozens of defendants underscore the defendants' need to control the access to their most sensitive information.

Any perceived hardship to the plaintiff caused by this requirement is brought on by the plaintiff itself who chose to bring these cases against so many defendants who are known rivals in the industry.  Contrary to its assertions, there is also no undue prejudice to the plaintiff, who should not be permitted to use a defendant's highly confidential information for any purpose other than the litigation, and certainly not in a separate litigation against a different defendant. Thus, prohibiting Nonend from disclosing any defendants' confidential information to any other defendant or its attorneys in connection with a different action is reasonable, necessary, and is in fact already required by the plain terms of the model protective order.

\*       \*       \*

Based on their statements set forth above, the parties jointly ask the Court to rule on their disputes and enter an appropriate protective order to govern this case.

August 27, 2015                              Respectfully submitted,

- 27 -

*/s Matthew J. Antonelli*
Matthew J. Antonelli (lead attorney)
Texas Bar No. 24068432
matt@ahtlawfirm.com
Zachariah S. Harrington
Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
ANTONELLI, HARRINGTON &
THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

S.  Calvin Capshaw, III
State Bar No. 03783900
Email:  ccapshaw@capshawlaw.com
Elizabeth L. DeRieux
State Bar No. 05770585
Email:  ederieux@capshawlaw.com
D. Jeffrey Rambin
State Bar No. 00791478
Email:  jrambin@capshawlaw.com
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: (903)-233-9800
Facsimile: (903)-236-8787

**Attorneys for Nonend Inventions, N.V.**


*/s/ Claudia Wilson Frost*
Claudia Wilson Frost
State Bar No. 21671300
**DLA PIPER LLP (US)**
1000 Louisiana, Suite 2800
Houston, TX  77002-5005
Telephone:  713.425.8450
Facsimile:  713.425.8401

- 28 -

Brian K. Erickson
State Bar No. 24012594
Jeffrey Cole
State Bar No. 24045679
**DLA PIPER LLP (US)**
401 Congress Ave., Suite 2500
Austin, TX  78701-3799
Telephone:  512-457-7000
Facsimile:  512-457-7001

Mark D. Fowler *(pro hac vice)*
Robert Buergi *(pro hac vice)*
Krista A. Celentano *(pro hac vice)*
**DLA PIPER LLP (US)**
2000 University Ave.
East Palo Alto, CA  94303-2214
Telephone:  650.833.2000
Facsimile:  650.833.2001

Erin P. Gibson *(pro hac vice)*
**DLA PIPER LLP (US)**
401 B Street
San Diego, CA  92101-4297
Telephone:  619.699.2700
Facsimile:  619.699.2701

Michael E. Jones
State Bar No. 10929400
**Potter Minton, PC**
110 North College, Suite 500
Tyler, TX  75702
Telephone:  903.597.8311
Facsimile:  903.593.0846

**ATTORNEYS FOR DEFENDANT
APPLE INC.**

*/s/ M. Scott Fuller (w/permission)*
Roy W. Hardin
Texas Bar No. 08968300
M. Scott Fuller
Texas Bar No. 24036607
Paul D. Lein
Texas Bar No. 24070133

- 29 -

Howard L. Lim
Texas Bar No. 24092701
LOCKE LORD LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas  75201-6776
Telephone:  (214) 740-8000
Facsimile:  (214) 740-8800
E-mail: rhardin@lockelord.com
E-mail: sfuller@lockelord.com
E-mail: plein@lockelord.com
E-mail: hlim@lockelord.com

**ATTORNEYS FOR
THE HUAWEI DEFENDANTS**


*/s/ Amr. O. Aly (w/permission)*
Amr O. Aly
MAYER BROWN LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 506-2304
Fax: (212) 849-5788
aaly@mayerbrown.com

Stephen E. Baskin
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006-1101
Tel: (202) 263-3364
Fax: (202) 263-3300
sbaskin@mayerbrown.com

Harry L. Gillam, Jr.
TX State Bar No. 07921800
gil@gillamsmithlaw.com
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**Attorneys for Defendants AT&T Mobility, LLC,
Cricket Communications, Inc., and Leap
Wireless International, Inc.**

- 30 -

*/s/ Robert W. Weber (w/permission)*
Robert W. Weber
Texas Bar No. 21044800
SMITH WEBER, L.L.P.
5505 Plaza Drive – P.O. Box 6167
Texarkana, TX  75505-6167
Tel: (903) 223-5656
Fax: (903) 223-5652
bweber@smithweber.com

Derek H. Swanson (admitted pro hac vice)
George B. Davis (admitted pro hac vice)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA  23219
Tel: (804) 775-1000
Fax: (804) 698-2016
dswanson@mcguirewoods.com
gdavis@mcguirewoods.com

**Attorneys for Defendants Sprint Spectrum L.P.,
Sprint Solutions, Inc., Boost Mobile, LLC, and
Virgin Mobile USA, L.P.**

*/s/ Matthew C. Bernstein (w/permission)*
Matthew C. Bernstein (Lead Attorney)
California State Bar No. 199240
Kevin J. Patariu
Texas State Bar No. 24074859
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA 92130-2594
Telephone: (858) 720-5700
Facsimile: (858) 720-5799
Email: MBernstein@perkinscoie.com
Email: KPatariu@perkinscoie.com

Antoine M. McNamara
Washington State Bar No. 41701
PERKINS COIE LLP

- 31 -

1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
Email: AMcNamara@perkinscoie.com
Darby V. Doan
Texas State Bar No. 00793622
Joshua R. Thane
Texas State Bar No. 24060713
Haltom & Doan
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: ddoan@haltomdoan.com
Email: jthane@haltomdoan.com

**ATTORNEYS FOR DEFENDANTS
HEWLETT-PACKARD COMPANY, FUJITSU
AMERICA, INC., AND FUJITSU LIMITED**


*/s/ Philip Morin (w/permission)*
Matthew C. Bernstein (Lead Attorney)
California State Bar No. 199240
Kevin J. Patariu
Texas State Bar No. 24074859
Philip A. Morin *(Pro Hac Vice)*
California State Bar No. 256864
Michelle N. Berger *(Pro Hac Vice)*
California State Bar No. 290721
PERKINS COIE LLP
11988 El Camino Real, Suite 350
San Diego, CA 92130-2594
Telephone: (858) 720-5700
Facsimile: (858) 720-5799
Email: MBernstein@perkinscoie.com
Email: KPatariu@perkinscoie.com
Email: PMorin@perkinscoie.com
Email: MCunningham@perkinscoie.com

Daniel T. Shvodian
California State Bar No. 184576
Wing H. Liang
California State Bar No. 285521

- 32 -

PERKINS COIE LLP
3150 Porter Drive
Palo Alto, CA 94304-1212
Telephone: (650) 838-4300
Facsimile: (650) 838-4350
Email: DShvodian@perkinscoie.com
Email: WLiang@perkinscoie.com

Antoine M. McNamara
Washington State Bar No. 41701
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
Email: AMcNamara@perkinscoie.com
Jennifer H. Doan
Texas State Bar No. 08809050
Christy Samansky Hawkins
Texas State Bar No. 24085575
Joshua Reed Thane
Texas State Bar No. 24060713
Haltom & Doan
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: csamansky@haltomdoan.com
Email: jthane@haltomdoan.com

**ATTORNEYS FOR DEFENDANTS
MICROSOFT CORPORATION, HTC
AMERICA, INC., AMAZON.COM, INC., AND
AMAZON.COM, LLC**


*/s/ Johanna Jacob (w/permission)*
Christopher P. Broderick (SBN 180254)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
777 South Figueroa Street
Los Angeles, CA 90017
Telephone:  213-629-2020
Facsimile:   213-612-2499
cbroderick@orrick.com

- 33 -

Johanna L. Jacob (SBN 286796)
ORRICK, HERRINGTON & SUTCLIFFE, LLP
405 Howard Street
San Francisco, CA 94105
Telephone:  (415) 773-5420
Facsimile:   (415) 773-5759
Email:  jjacob@orrick.com

**Attorneys for Sharp Electronics Corporation**


*/s/ Trey Yarbrough w/permission)*
Trey Yarbrough
Bar No. 22133500
Yarbrough Wilcox, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, TX 75702
(903) 595-3111
Fax:  (903) 595-0191
trey@yw-lawfirm.com

Michael J. Kasdan
Joseph M. Casino
WIGGIN AND DANA LLP
450 Lexington Avenue, 38th Floor
New York, New York 10017
(212) 490-1700

**Attorneys for Panasonic Corporation and
Panasonic Corporation of North America**


*/s/ Brian Claassen (w/permission)*
Irfan A. Lateef
CA Bar No. 204,004
2ial@knobbe.com
Brian C. Claassen
CA Bar No. 253,627
2bcc@knobbe.com
**KNOBBE MARTENS OLSON & BEAR LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
(949) 760-0404

- 34 -

Fax: (949) 760-9502

Trey Yarbrough
Bar No.  22133500
**YARBROUGH WILCOX, PLLC**
100 E. Ferguson St., Ste. 1015
Tyler, TX 75702
(903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com

**Attorneys for Defendants Toshiba Corporation, Toshiba America, Inc., and Toshiba America Information Systems, Inc.**


*/s/ Melissa R. Smith (w/permission)*
Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX 75670
Phone: 903-934-8450
Fax: 903-934-9257
Email: melissa@gillamsmithlaw.com

Michael Kenneth Plimack
CA State Bar No. 133869
Christine Saunders Haskett
CA State Bar No. 188053
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111-5356
Tel:  (415) 591-6000
Fax:  (415) 591-6091
Email: mplimack@cov.com
Email: chaskett@cov.com

**Attorneys for Defendant Samsung Electronics America, Inc.**


*/s/ Fred I. Williams (w/permission)*
Fred I. Williams *(Lead Attorney)*

- 35 -

Texas State Bar No. 00794855
fwilliams@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
600 Congress Avenue, Suite 1350
Austin, Texas 78701
Telephone: 512.499.6200
Facsimile:  512.499.6290

Charles Everingham IV
Texas State Bar No. 00787447
ceveringham@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
Austin Bank Building
911 West Loop 281, Suite 412
Longview, Texas  75604
Telephone:  903.297.7400
Facsimile:  903.297.7402

Kellie M. Johnson
Texas State Bar No. 24070003
kmjohnson@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201
Telephone:  214.969.2743
Facsimile:  214.969.4343

John Wittenzellner
Pennsylvania State Bar No. 308996
jwittenzellner@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, Pennsylvania 19103
Telephone: 215.965.1200
Facsimile:  215.965.1210

**Attorneys for Lenovo (United States) Inc.**

_/s/ Fred I. Williams (w/permission)_
Fred I. Williams _(Lead Attorney)_

- 36 -

Texas State Bar No. 00794855
fwilliams@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
600 Congress Avenue, Suite 1350
Austin, Texas 78701
Telephone: 512.499.6200
Facsimile:  512.499.6290

Charles Everingham IV
Texas State Bar No. 00787447
ceveringham@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
Austin Bank Building
911 West Loop 281, Suite 412
Longview, Texas  75604
Telephone:  903.297.7400
Facsimile:  903.297.7402

Kellie M. Johnson
Texas State Bar No. 24070003
kmjohnson@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201
Telephone:  214.969.2743
Facsimile:  214.969.4343

John Wittenzellner
Pennsylvania State Bar No. 308996
jwittenzellner@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, Pennsylvania 19103
Telephone:  215.965.1200
Facsimile:  215.965.1210

**Attorneys for Motorola Mobility LLC**


*/s/ Joshua R. Thane (w/permission)*
Darby V. Doan
Texas Bar No.
Joshua R. Thane
Texas Bar No. 24060713

Haltom & Doan
6500 Summerhill Road, Suite 100
Texarkana, TX  75503
Telephone:  (903) 255-1000
Facsimile:  (903) 255-0800
Email:  ddoan@haltomdoan.com
Email:  jthane@haltomdoan.com

**ATTORNEYS FOR DEFENDANT
SONIM TECHNOLOGIES, INC.**


*/s/ Michael C. Ting (w/permission)*
Brian Craft (Texas Bar No. 04972020)
Eric Findlay (Texas Bar No. 00789886)
FINDLAY CRAFT, P.C.
Principal Office:
102 North College Avenue, Suite 900
Tyler, Texas 75702
Tel: (903) 534-1100
Fax: (903) 534-1137
Email: bcraft@findlaycraft.com
Email: efindlay@findlaycraft.com


Michael C. Ting (CA State Bar No. 247610)
Ken K. Fung (CA State Bar No. 283854)
TECHKNOWLEDGE LAW GROUP LLP
100 Marine Parkway, Suite 200
Redwood Shores, CA 94065
Tel: (650) 517-5200
Fax: (650) 226-3133
Email: mting@tklg-llp.com
Email: kfung@tklg-llp.com

***Counsel for Defendants* ACER INC. AND ACER
AMERICA CORPORATION**


*/s/ John H. McDowell, Jr. (w/permission)*
John H. McDowell, Jr.
Email: johnmcdowell@andrewskurth.com
Benjamin J. Setnick
Email: bensetnick@andrewskurth.com
ANDREWS KURTH LLP

- 38 -

1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone:  214-659-4400
Facsimile:  214-915-1434

James V. Mahon
Email: jamesmahon@andrewskurth.com
ANDREWS KURTH LLP
4505 Emperor Blvd, Suite 330
Durham, NC 27703
Telephone:     919-864-7210

**ATTORNEYS FOR DEFENDANTS SONY
MOBILE COMMUNICATIONS (USA) INC**.


*/s/ Todd M. Siegel (w/permission)*
Kristen L. Reichenbach (OR Bar No. 115858)
kristen.reichenbach@klarquist.com
Todd M. Siegel (OR Bar No. 001049)
todd.siegel@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon Street, Suite 1600
Portland, Oregon  97204
Telephone:  (503) 595-5300
Facsimile:  (503) 595-5301

**Attorneys for Defendants T-Mobile USA, Inc.
and T-Mobile US, Inc.**


 */s/ Frank C. Cimino, Jr. (w/permission)*
Michael E Jones
State Bar No. 10929400
mikejones@potterminton.com
Potter Minton, a Professional Corporation
110 N College Avenue Suite 500
Tyler, TX 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

Frank C. Cimino, Jr.
FCCimino@venable.com
Megan S. Woodworth

- 39 -

MSWoodworth@venable.com
Calvin R. Nelson
CRNelson@venable.com
VENABLE LLP
575 7th Street, NW
Washington, D.C. 20004
Telephone: (202) 344-4569
Facsimile: (202) 344-8300

**Counsel for Defendants Cellco Partnership
d/b/a/ Verizon Wireless and Verizon
Communications Inc.**


 */s/ Kimball R.  Anderson (w/permission)*
Deron R.  Dacus
ddacus@dacusfirm.com
Texas State Bar No. 00790553
THE DACUS FIRM, PC
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 705-1117

Kimball R.  Anderson
kanderson@winston.com
Kathleen B. Barry
kbarry@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700

J. Michael Woods
mwoods@winston.com
WINSTON & STRAWN LLP
1700 K St. NW
Washington, DC 20006
Telephone: (202) 282-5000
Facsimile: (202) 282-5100

**Attorneys for Defendant Dell Inc.**

*/s/ Stuart W. Yothers (w/permission)*
John F. Bufe
POTTER MINTON, PC
110 N. College Avenue, Suite 500
Tyler, TX 75702
(903)-597-8311 (telephone)
(903)-593-0846 (facsimile)
johnbufe@potterminton.com

William J. McCabe
Stuart W. Yothers
Meera Nair
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036
(212) 596-9000 (telephone)
(212) 596-9090 (facsimile)
william.mccabe@ropesgray.com
stuart.yothers@ropesgray.com
meera.nair@ropesgray.com

Maxwell A. Fox (pro hac vice pending)
ROPES & GRAY LLP
JP Tower 30F
2-7-2, Marunouchi
Chiyoda-ku, Tokyo 100-7030, Japan
+81-3-6259-3500 (telephone)
+81-3-6259-3501 (facsimile)
maxwell.fox@ropesgray.com

**Attorneys for NEC Corporation of America**

*/s/ David A. Bailey (w/permission)*
Everett Upshaw
State Bar of Texas No. 24025690
everettupshaw@everettupshaw.com
David A. Bailey, Of Counsel
State Bar of Texas No. 24078177
davidbailey@everettupshaw.com
**UPSHAW PLLC**
811 S. Central Expressway, Suite 307
Richardson, Texas 75080
P: (972) 920-8000
F: (972) 920-8001

- 41 -

*ATTORNEYS FOR DEFENDANT*
*ZTE (USA) INC.*


GREENBERG TRAURIG, LLP

/s/ Richard D. Harris
Richard D. Harris, Lead Attorney
Illinois Bar No. 1137913
(admitted in E.D. Tex.)
harrisr@gtlaw.com
Jeffrey G. Mote
Illinois Bar No. 6243534
(admitted in E.D. Tex.)
motej@gtlaw.com
Matthew J. Levinstein
Illinois Bar No. 6300343
(admitted in E.D. Tex.)
levinsteinm@gtlaw.com
GREENBERG TRAURIG LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Telephone: (312) 465-8400
Facsimile: (312) 456-8435

Rene Trevino
TrevinoR@gtlaw.com
Texas Bar No. 24051447
GREENBERG TRAURIG LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Telephone: (713) 374-3500
Facsimile: (713) 374-3505

**Counsel For Defendants**
**LG Electronics U.S.A., Inc., and LG Electronics**
**Mobilecomm USA Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of August 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Matthew J. Antonelli*
Matthew J. Antonelli

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with counsel for defendants who have consented to this motion being filed as a joint motion.

*/s/ Matthew J. Antonelli*
Matthew J. Antonelli

- 43 -